J-S28015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN RE: S-S.T.R, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.R., FATHER, | |
| | No. 3684 EDA 2015 |

Appeal from the Decree October 14, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000651-2015

| | |
|---|---|
| IN RE: T.S.S.F.M, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| APPEAL OF: D.R., FATHER, | |
| | No. 3685 EDA 2015 |

Appeal from the Decree October 14, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000650-2015

| | |
|---|---|
| IN RE: K.D.O.C.R, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| APPEAL OF: D.R., FATHER, | |
| Appellant | No. 3686 EDA 2015 |

Appeal from the Decree October 14, 2015

In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000652-2015

BEFORE: BOWES, LAZARUS AND PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED APRIL 29, 2016**

D.R. ("Father") appeals from the decrees entered on October 14, 2015, which terminated his parental rights to his three daughters, K.D.O.C.R. ("K.R."), S-S.T.R. ("S-S.R."), and T.S.S.F.M. ("T.M."), collectively (the "children"), ages sixteen, thirteen and eleven respectively.[1] We affirm and grant the petition filed by Jennifer A. Santiago, Esquire seeking leave to withdraw from representation.

During the evidentiary hearing on the petitions filed by the Philadelphia Department of Human Services ("DHS") to terminate Father's parental rights, Father's counsel stipulated that, if called to testify, Dawn Roberts, the caseworker assigned to the family for approximately three years, would testify in accordance with the statement of facts that the agency attached to each of the respective petitions. N.T., 10/14/15, at 19-20. We rely upon that stipulation in summarizing the relevant facts and procedural history.

_____

[1] The trial court also involuntarily terminated the parental rights of the children's mother, S.M., who is not a party to this appeal.

* Retired Senior Judge assigned to the Superior Court.

- 2 -

This family has had a prolonged relationship with DHS since 2011, when the agency discovered that S.M. ("Mother"), the children, and three half-siblings that are not relevant to this appeal had been evicted from a family member's home. K.R. and T.M. were regularly truant during the 2011-2012 school year. All three children had been diagnosed with attention deficit hyperactivity disorder ("ADHD"), but they went six months between July and December 2012 without medication. The family's housing was uncertain and the children's lives were unstable. Father has a history of substance abuse and domestic violence, and his whereabouts throughout this period were often unknown. In addition to intermittent homelessness, chronic truancy, parental neglect, and domestic violence, the children were forced to endure emotional, physical, and sexual abuse committed by relatives acting as caretakers.

On February 11, 2013, the juvenile court adjudicated the children dependent. The trial court ordered Father to submit to drug and alcohol screens, and to complete a substance abuse assessment and evaluation. It ordered DHS to refer Father to the Achieving Reunification Center ("ARC"). DHS developed a family service plan ("FSP") outlining several goals for Father including, *inter alia*, 1) maintain safe and suitable housing; 2) satisfy the children's basic nutritional and clothing needs; 3) participate in drug and

alcohol evaluation with the Clinical Evaluation Unit ("CEU") and comply with dual diagnosis treatment; and 4) meet with ARC on a weekly basis.

Father's compliance was minimal, and he failed to demonstrate that he was able to safely and appropriately care for his daughters. On June 30, 2014, the trial court terminated Father's telephone contact with the children. Approximately two weeks later, the trial court suspended Father's supervised visitations pending the implementation of a therapeutic component to visitation. He was also prohibited from contacting his daughters by email or social media. On April 21, 2015, Father was discharged from ARC and drug and alcohol counseling due to his lack of participation. That fall, Father submitted two positive urine screens to the CEU that confirmed his use of PCP.

On September 21, 2015, DHS filed petitions to terminate Father's parental rights to K.R., T.M., and S-S.R. Although Attorney Santiago stipulated that Father had been served with notice of the hearing date and despite his statements to her indicating his intent to appear at the hearing and oppose the petitions, Father failed to attend. *Id*. at 5. In addition to the stipulations regarding Father's failure to comply with the FSP, DHS presented Ms. Robert's testimony to establish the lack of a meaningful bond between Father and the children and to explain why severing the existing bond would not result in irreparable harm. Ms. Roberts observed that K.R. does not want to maintain a relationship with Father. *Id*. at 23. Similarly,

T.M. informed Ms. Roberts that "she's ready to move on" from her relationship with Father. *Id* at 24. As it relates to the youngest daughter, S-S.R., Ms. Roberts reported that Father had not had any contact with S-S.R. since the court terminated visitation on July 2014, and like her sisters, she was prepared to put her relationship with Father behind her. *Id*. at 25-26. In sum, Ms. Roberts concluded that it would be in the children's best interest to terminate Father's parental rights in order to pursue the goal of adoption. *Id*. at 23, 25.

Citing Father's lack of compliance with his FSP goals, Beth Kahn, Esquire, the child advocate that was appointed to represent the children's best interest during the dependency and termination proceedings, joined DHS's petition to terminate Father's parental rights and requested that the trial court change the children's permanency goal to adoption. *Id*. at 28-29. Attorney Santiago did not present any evidence on Father's behalf. At the close of the hearing, the trial court ruled from the bench that DHS satisfied its burden of proving by clear and convincing evidence the statutory grounds for terminating Father's parental rights pursuant to § 2511 (a)(1), (2), (5), (8), and (b).[2] Specifically, the court reasoned,

---

[2] The pertinent sections of the Adoption Act provides as follows.

*(Footnote Continued Next Page)*

———————————

**(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1)  The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

(5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.

. . . .

(8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

*(Footnote Continued Next Page)*

[B]ased upon [the] clear and convincing evidence the Court has heard today, the Court finds [DHS] has sustained its burden as to all the children.

. . . .

As it relates to Father, . . . the Court finds that [DHS] sustained its burden as to [§] 2511 (a)(1), (2), (5), and (8).

As it relates to [§] 2511 (b), the Court is well aware that no true bond exists. The Court is aware that with regard to the children, visitation was suspended, based upon the fact that [Father] proved to be a detriment emotionally to his children coming to whatever visits he came to in an intoxicated state, which put the children in jeopardy. And from July of 2014, if the Court's memory is correct, that those visits were terminated and [Father] did nothing to attempt to move beyond -- move beyond the suspension.

Wherefore, the Court finds with regard to these children and [Father], that no true parent bond exists between Father and children [that] would be detrimental or [cause] irreparable harm if that bond was terminated[.] [T]here is a bond between

*(Footnote Continued)* ——————————

. . . .

**(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).

the respective children and their foster caregivers -- that bond being more consistent with a true loving and parental and supportive family environment.

It is in the best interest of th[e]se children for the bond between . . . Father and children to be terminated. The goal of adoption is approved.

*Id*. at 29-31.

This timely appeal followed the entry of the written decrees that formally terminated Father's paternal rights. In lieu of a Pa.R.A.P. 1925(b) statement of matters complained of on appeal, Attorney Santiago filed a Rule 1925(c)(4) statement that asserted her intention to submit an ***Anders*** brief, which she filed with this Court along with a petition to withdraw from representation. ***See Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981).[3] We may not address the merits of the appeal without first reviewing the request to

_____

[3] The trial court erroneously determined that any issue Father sought to raise would be waived due to the inapplicability of Rule 1925(c), ostensibly because the introductory phrase to the rule states, "In a criminal case." ***See*** Pa.R.A.P. 1925(c)(4). Contrary to the trial court's perspective, it is a well-ensconced principle that counsel appointed to represent an indigent parent in an appeal concerning the involuntary termination of parental rights may submit an ***Anders*** brief and petition for withdrawal from representation. It is axiomatic that a rule of appellate procedure that outlines the precise procedure for counsel to follow in anticipation of withdrawal pursuant to ***Anders*** would necessarily apply to counsel representing parents in cases involving the involuntary termination of parental rights. Thus, notwithstanding the trial court's declaration of waiver and consistent with Rule 1925(c), if our independent review of the record had discerned arguably meritorious issues, they would not have been deemed waived.

withdraw. ***Commonwealth v. Rojas***, 874 A.2d 638, 639 (Pa.Super. 2005). Accordingly, we review Attorney Santiago's petition at the outset.

In ***In re V.E.***, 611 A.2d 1267 (Pa.Super. 1992), this Court extended the ***Anders*** principles to appeals involving the termination of parental rights. We stated that counsel appointed to represent an indigent parent on appeal from a decree involuntarily terminating parental rights may, after a conscientious and thorough review of the record, petition this Court for leave to withdraw from representation and submit an ***Anders*** brief. ***Id***. at 1275. In ***Commonwealth v. Santiago***, 978 A.2d 349, 361 (Pa. 2009), our Supreme Court altered our application of the ***Anders*** briefing requirements to require counsel to fully articulate the legal basis for his conclusion that the appeal is frivolous.

In order to be permitted to withdraw, counsel must meet three procedural requirements: 1) petition for leave to withdraw and state that, after making a conscientious examination of the record, counsel has concluded that the appeal is frivolous; 2) provide a copy of the ***Anders*** brief to the parent; and 3) inform the parent that he has the right to retain private counsel or raise, *pro se*, additional arguments that the parent deems worthy of the court's attention. ***Id***.

Attorney Santiago's petition to withdraw sets forth that she reviewed the record and found no meritorious claims to argue.[4] She served Father with copies of the petition to withdraw, the **Anders** brief, and a letter informing Father of her decision and explaining his right to retain new counsel or proceed on a *pro se* basis and raise any additional issues he deemed worthy of this Court's review. A copy of counsel's letter to Father is appended to the **Anders** brief.[5] Thus, Attorney Santiago complied with the procedural aspects of **Anders**.

We must now examine whether counsel's **Anders** brief meets the substantive elements of **Santiago**. Pursuant to **Santiago**, an **Anders** brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, **supra** at 361.

---

[4] While Attorney Santiago styled Father's claims as meritless rather than frivolous, the obvious intent of her review of the record was that the instant appeal is wholly frivolous, a position she expressed explicitly in the **Anders** brief.

[5] Father failed to respond to counsel's petition to withdraw.

In her brief, Attorney Santiago summarized the factual and procedural history of the case and referenced the portions of the record that she believed ultimately fail to support any issues of merit. Counsel delineated case law that demonstrates that DHS proved by clear and convincing evidence the statutory grounds to terminate Father's parental rights pursuant to § 2511(a)(1), (2), (5), (8) and (b). She asserts that no non-frivolous issues are preserved for appeal. Thus, the brief is compliant with *Santiago*.

Next, we turn to whether Father's appeal is, in fact, frivolous. Our standard of review is well settled.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Involuntary termination of parental rights is governed by § 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938. As the party petitioning for termination of parental rights, CYS "must prove the statutory criteria for that

termination by at least clear and convincing evidence." *In re T.R.,* 465 A.2d 642, 644 (Pa. 1983). Clear and convincing evidence is defined as "testimony that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Matter of Sylvester,* 555 A.2d 1202, 1203–04 (Pa. 1989).

After a thorough review of the *Anders* brief and the pertinent law, and following our independent examination of the certified record, we agree with Attorney Santiago's assessment that the appeal is wholly frivolous and unsupported in law or in fact. Stated simply, Father was chronically noncompliant with his FSP goals and he never demonstrated an interest in performing his parental duties. One example of Father's pointed indifference toward his children is the fact that he was conspicuously absent during the hearing on DHS's petition to terminate his parental rights despite discussing the anticipated proceeding with his attorney. It is also relevant that Father failed to comply with the drug and alcohol treatment component of the FSP since his prolonged substance abuse was one of the primary reasons for DHS's involvement with the family. Father was twice discharged from treatment programs for nonparticipation, and he submitted two urine screens that were positive for PCP.

Most importantly, Father has not maintained a parent-child relationship with any of the children, who are sufficiently mature to

articulate their disillusionment with Father and their disinterest in reunification. Indeed, Ms. Roberts confirmed that neither K.R., T.M., nor S-S.R. desires any type of relationship with Father, with whom they have not interacted since the trial court suspended visitations during July 2014, more than one year before DHS filed its petition to terminate Father's parental rights.

Petition of Jennifer A. Santiago, Esquire, to withdraw as counsel is granted. Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/29/2016